IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EDWIN ADOLFO LEMUS CRISTALES, <br><br> Petitioner, <br><br> v. <br><br> RYAN ARBON, Weber County Sheriff; RUBEN LEYVA, Acting Field Office Director, Salt Lake City Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement (ICE/ERO); BRIAN HENKE Field Office Director for Las Vegas/Salt Lake City; KRISTI NOEM, Secretary United States Department of Homeland Security; PAMELA BONDI, U.S. Attorney General, <br><br> Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR HABEAS CORPUS** <br><br> Case No. 2:26-cv-00217-JNP <br><br> Chief District Judge Jill N. Parrish |

On March 16, 2026, Petitioner Edwin Adolfo Lemus Cristales, a Salvadoran national, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Petitioner also filed an emergency motion to stay transfer during the pendency of the petition. ECF No. 2. For the following reasons, the court denies the emergency motion but grants the petition.

## BACKGROUND

### I.    Edwin Adolfo Lemus Cristales

Petitioner's declarations and the exhibits produced by the parties establish the following. Petitioner is a citizen of El Salvador who has resided in the United States since October 2021. He entered the United States without admission or inspection. ECF No. 1 ¶ 4.

On March 15, 2026, Petitioner was arrested in Utah on an alleged charge of public intoxication. ECF No. 1 ¶ 6. He was released into Immigration and Custom Enforcement's ("ICE") custody and was transferred to the Weber County Jail. ECF No. 1 ¶ 6. ICE detained him under 8 U.S.C. § 1225(b)(2) and refused to issue him a bond. ECF No. 1 ¶ 7; ECF No. 8 at 2. ICE alleges he is subject to removal under 8 U.S.C. §§ 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I).

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating his custody is in violation of the law. *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner.").

## ANALYSIS

The petition before the court invokes a legal issue that this court has already ruled on. Specifically, Respondents argue that Petitioner is an applicant for admission who is seeking admission and is thus subject to mandatory detention under 8 U.S.C. § 1225(b)(2). In *Torres Medina v. Tjaden*, this court, like many others, ruled that the government's new interpretation of § 1225(b)(2) violates the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq. See*

*Torres Medina v. Tjaden*, No. 2:26-CV-00195-JNP, 2026 WL 800677, at *13 (D. Utah Mar. 23, 2026). The court adopts the reasoning of its prior ruling in holding that Respondents' detention of Petitioner under § 1225(b)(2) is unlawful.[1] Petitioner is not seeking admission as the ordinary meaning of the term in § 1225(b)(2) would suggest.[2]

The court acknowledges that since its ruling in *Torres Medina*, the Eighth Circuit ruled that the government's new interpretation of § 1225(B)(2)(A) is lawful. *Joaquin Herrera Avila v. Pamela Bondi et al.*, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026). The Eighth Circuit

---

[1] Petitioner also raises a Due Process claim. Because the court finds that Petitioner's detention under § 1225(b)(2) is unlawful under the Immigration and Nationality Act and that he is entitled to a bond hearing, the court need not address the Due Process claim. *See Camreta v. Greene*, 563 U.S. 692, 705 (2011) (noting that "a longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them").

[2] At a March 27, 2026 hearing on this petition, Respondents asserted that Petitioner's submission of a Form I-192 ("Application for Advance Permission to Enter as Nonimmigrant") as part of a U-visa process implies that Petitioner is seeking admission. The court disagrees. As the court held in *Torres Medina*, "the term 'seeking admission' most clearly applies to 'noncitizens who are *presently* trying to lawfully and *physically enter* the United States.'" *Torres Medina* v. *Tjaden et al.*, No. 2:26-CV-00195-JNP, 2026 WL 800677, at *7 (D. Utah Mar. 23, 2026). Petitioner is not trying to lawfully and physically enter the country.

In fact, Form I-192 serves two functions. First, it may be used if a noncitizen is inadmissible and is "seeking advance permission to temporarily enter the United States as a nonimmigrant." *Form I-192 Instructions*, United States Citizen and Immigration Services (dated 1/20/25). Second, it may be used if a noncitizen "[is] in the United Stated as a T nonimmigrant status applicant or U nonimmigrant status petitioner seeking to waive [his or her] inadmissibility." *Id.* Here, as demonstrated by the record, Petitioner filed the form for the latter reason. *See* ECF No. 15; *see Sunday v. Att'y Gen. United States of Am.*, 832 F.3d 211, 217 (3d Cir. 2016) (noting that for a petitioner who was previously admitted and overstayed, a waiver of inadmissibility could be obtained from the Department of Homeland Security). The filing of the Form I-192 thus does not imply that Petitioner is seeking admission.

Other courts have similarly found that noncitizens were not seeking admission in the § 1225(b)(2)(A) context despite pending I-192 applications. *See, e.g.*, *Cortez-Gonzalez v. Noem*, 811 F. Supp. 3d 1287, 1292 n.1 (D.N.M. 2025); *Jose A. v. Noem*, No. 26-CV-480 (JMB/ECW), 2026 WL 172524, at *1 (D. Minn. Jan. 22, 2026).

joins the Fifth Circuit on this issue, though the court notes that the Seventh Circuit, in the preliminary context, has found that the government's new interpretation is likely unlawful. *Contrast Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026) (finding the government's new interpretation is lawful), *with Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025) (finding the government's new interpretation is likely unlawful).

The court does not find the Eighth Circuit's ruling persuasive. In its prior order, the court has already addressed the majority of the Eighth Circuit's reasoning, which closely tracks with the Fifth Circuit's in *Buenrostro-Mendez*. *See Torres Medina v. Tjaden*, No. 2:26-CV-00195-JNP, 2026 WL 800677, at *4–*13 (D. Utah Mar. 23, 2026). The court restricts its analysis here to two additional points raised by the Eighth Circuit.

First, the majority in *Avila* found that the grammatical structure of § 1225(b)(2)(A) supports the proposition that "applicant for admission" and "seeking admission" are equivalent terms. As the panel stated: "Generally, when a statute lists a phrase as a distinct condition for the occurrence of another event, it will use clauses with words like 'if' and 'and' to show that it is required." *Avila*, No. 25-3248, 2026 WL 819258, at *3. The majority found that the lack of the word "and" makes it "highly unnatural" for "seeking admission" to be a separate requirement. *Id.* The majority thus stated that "[s]ince the structure of the text does not indicate that this phrase has standalone meaning, merely using it as a synonym for something else does not make it surplusage." *Id.* at *4.

The court disagrees with the Eighth Circuit's conclusion. The grammatical structure of the relevant statutory language does not equate the two terms. The majority in *Avila* notes that clauses starting with "if" and "and" are *generally* used in statutes to identify distinct conditions, but in reaching its conclusion that "seeking admission" is not a distinct condition, it implies that an

4

absence of that syntax *necessarily* means there is no distinct condition. But that is just not true. Distinct conditions are not always identified by explicit conjunctive or disjunctive terminology. Here, the context of the sentence supports the presence of an implied conjunction. *See, e.g.*, *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 414 n.3 (2d Cir.), *amended on reh'g in part*, 151 F.4th 13 (2d Cir. 2025) (noting that another statute "links clauses (i) and (ii) by the implied conjunctive 'and,' and links clauses (i) and (ii) to clause (iii) by the conjunctive 'or'").

To be clear, the court is not just adding a word into the statute to justify its conclusion. Rather, the point is that context matters just as much in statutes as it does in other forms of writing. Courts on both sides of this issue have relied on context in determining the meaning of the statutory language in § 1225, and context remains important when dissecting § 1225(b)(2)(A) word-by-word for grammatical hints and syntactic clues. With respect to the Eighth Circuit's analysis here, the inclusion of an implied conjunctive "and" is bolstered by the plain meaning of the term "seeking admission." As the dissent noted in the *Avila*, "[a]lthough the canon against surplusage is not a 'silver bullet,' Congress went out of its way to include the phrase 'seeking admission.' And 'a variation in terms suggests a variation in meaning.'" *Avila*, No. 25-3248, 2026 WL 819258, at *7 (Erickson, J., dissenting). As this court has detailed in depth in *Torres Medina*, the plain reading of the two terms clearly indicates that they are not equivalent in meaning, and that context (along with the context of the rest of § 1225 and § 1226)[3] supports that "seeking admission" is a distinct

---

[3] As is worth repeating, lest we risk missing the forest for the trees, the overall structure of § 1225(b) makes it abundantly clear that the statute is grounded in the border context. For arriving noncitizens who are inadmissible for certain enumerated reasons, expedited removal applies (and with it, mandatory detention). 8 U.S.C. § 1225(b)(1)(A)(i). For other noncitizens who are seeking admission, normal removal proceedings under § 1229a apply (but with mandatory detention). 8 U.S.C. § 1225(b)(2)(A).

condition of § 1225(b)(2)(A). *Torres Medina*, No. 2:26-CV-00195-JNP, 2026 WL 800677, at *6–*7.

Next, the Eighth Circuit points to § 1225(b)(2)(B) as signaling that the two terms are equivalent. This section exempts "stowaway[s]" from mandatory detention under § 1225(b)(2)(A). The Eighth Circuit asks if "'seeking admission' only refers to aliens who are taking 'present-tense, affirmative action' to gain lawful entry into the country, why would an exception be needed for stowaways, who are unquestionably not doing so?" *Avila*, No. 25-3248, 2026 WL 819258, at *4. The panel answers the question by stating that "[t]he obvious explanation is that an alien who is a stowaway can nonetheless be 'seeking admission' because, like an 'applicant for admission,' an alien 'seek[s] admission' under the statute simply by being 'present in the United States' while having 'not been admitted.'" *Id.*

But both the question put forth and the answer provided by the majority in *Avila* falter upon closer inspection. The majority asserts that (1) because stowaways are not seeking admission as the plain meaning of the term would suggest, and (2) because there is nevertheless a stowaway exception to § 1225(b)(2)(A), which deals with those who are seeking admission, the term "seeking admission" must in fact be equivalent to the broader term "applicant for admission."

First, the premise of this hypothetical is faulty. It is not "unquestionabl[e]" that stowaways are not "taking 'present-tense, affirmative action' to gain lawful entry into the country." *Id.* A stowaway, as defined in § 1101(a)(49), is a noncitizen "who obtains transportation without the consent of the owner, charterer, master or person in command of any vessel or aircraft through concealment aboard such vessel or aircraft." 8 U.S.C. § 1101(a)(49). A noncitizen who gets transport on a vessel without the consent of the owner may very well still attempt to seek admission (under the plain meaning of the term) once they arrive at the port of entry. The stowaway label is

6

descriptive of how someone got to the border or port of entry, not of how they attempted entry. The inclusion of the stowaway exception therefore does not give rise to any implication that "seeking admission" should be understood to be as broad as "applicant for admission."

Second, the stowaway exception relates more to the "applicant for admission" term rather than the "seeking admission" term. The statute clearly states that "in no case may a stowaway be considered an applicant for admission or eligible for a hearing under [§ 1229a]." 8 U.S.C. § 1225(a)(2). The inclusion of the stowaway exception in § 1225(b)(2)(B) is thus more legibly read to be responsive to the general stowaway exclusion in § 1225(a)(2). Stowaways, who may try to seek admission once they arrive, are not eligible for the removal proceedings under § 1229a that § 1225(b)(2)(A) provides because they have been explicitly excluded from being considered as applicants for admission.

This court is cognizant that questions of statutory interpretation like the ones presented here often turn on what may appear to be textual and grammatical minutiae. But the court remains convinced that the weight of the minutiae here clearly supports that § 1225(b)(2) applies to noncitizens "seeking admission" and § 1226(a) applies to noncitizens "already in the country," as plainly understood. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

Because the court finds that Respondents are unlawfully detaining Petitioner under § 1225(b)(2), Petitioner has met his burden. *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under §

2241] is on the petitioner."). The court thus orders that Respondents must provide Petitioner a bond hearing before an immigration judge under 8 U.S.C. § 1226(a).[4]

The court, however, denies Petitioner's emergency motion, which seeks to prevent his transfer out of the District of Utah. ECF No. 2. The court's prior Order to Show Cause requires Respondents to keep Petitioner in a facility in which Petitioner is able to attend any hearings in-person. ECF No. 5. The court declines to require Petitioner to be housed within this district; given current contractual limitations, Respondents are not able to detain a detainee in local facilities for longer than 72 hours. *Tanchez v. Noem*, No. 2:25-CV-1150, 2026 WL 125184, at \*2 (D. Utah Jan. 16, 2026).

### CONCLUSION AND ORDER

For the foregoing reasons, the court ORDERS as follows:

1.  Mr. Lemus Cristales's petition for a writ of habeas corpus is GRANTED. ECF No. 1.

2.  The respondents are ORDERED to provide Mr. Lemus Cristales with a bond hearing under 8 U.S.C. § 1226(a) within 7 days from the date of this order. If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, he must be immediately released from detention in Salt Lake City, Utah.

3.  The respondents are ENJOINED from denying bond to Mr. Lemus Cristales on the basis that he is detained under 8 U.S.C. § 1225(b)(2).

---

[4] Respondents submitted to the court the administrative warrant for arrest for Petitioner (a Form I-200), dated March 16, 2026, satisfying the statutory pre-requisites for detention under § 1226(a). *See* ECF No. 16. Notably, the I-200 warrant form states that it is addressed to "[a]ny immigration officer authorized pursuant to [Section § 1226] . . . to serve warrants of arrest for immigration violations," further undercutting Respondents' argument that Petitioner is detained pursuant to § 1225(b)(2). *Id.*

4.  The respondents are further ORDERED to file a status report within 10 days from the date of this order stating whether Mr. Lemus Cristales has been granted bond and, if his request for bond was denied, the reasons for that denial.

Signed March 30, 2026.

BY THE COURT

_____
Jill N. Parrish
United States Chief District Judge

9